IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TONYA JOLLY LANDRUM,                    )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )       1:17CV940
                                        )
NANCY A. BERRYHILL,                     )
Acting Commissioner of Social Security, )
                                        )
                    Defendant.          )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Tonya Jolly Landrum ("Plaintiff") brought this action pursuant to Section

205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial

review of a final decision of the Commissioner of Social Security denying her claim for

Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-

motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on May 17, 2013, alleging a disability

onset date of October 9, 2009. (Tr. at 9, 238-46.)[1] Her claim was denied initially (Tr. at 119-

32, 148-51), and that determination was upheld on reconsideration (Tr. at 133-47, 153-56).

Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative

Law Judge ("ALJ"). (Tr. at 157-58.) Plaintiff, along with her non-attorney representative and

_____

[1] Transcript citations refer to the Administrative Record [Doc. #7].

an impartial vocational expert, attended the subsequent hearing on May 24, 2016. (Tr. at 9.) On September 7, 2016, the ALJ held a supplemental hearing at which both an impartial medical expert and an impartial vocational expert testified by telephone. Plaintiff's non-attorney representative was also present. (Id.) Following both hearings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act before December 31, 2014, her date last insured. (Tr. at 22.) On August 18, 2017, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

## II.    LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.   DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" between October 9, 2009, her alleged onset date, and December 31, 2014, her date last insured. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> lumbar degenerative disc disease; carpal tunnel syndrome; obesity, headaches, hypertension and depression[.]

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

(Tr. at 11.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 11-13.) Therefore, the ALJ assessed Plaintiff's RFC for the period up to December 31, 2014 as follows:

> [She can] perform light work as defined in 20 CFR 404.1567(b) except [she] can stand and/or walk for no more than four hours during a standard 8-hour workday. [Plaintiff] can occasionally climb ramps and stairs. [She] can never climb ladders, ropes or scaffolds. [She] can frequently balance. [Plaintiff] can occasionally stoop, kneel, crouch and crawl. [She] can have no exposure to unprotected heights. [She] should avoid even moderate exposure to moving mechanical parts. [Plaintiff] should avoid concentrated exposure to loud noise, bright light defined as light brighter than standard office lighting, extreme heat, extreme cold and vibrations. [She] is further limited to frequent handling, fingering and feeling bilaterally. [Plaintiff] can frequently push and pull with the bilateral upper extremities to the same extent she can lift and/or carry. [She] can frequently reach overhead bilaterally. [She] can frequently operate foot controls bilaterally. [Plaintiff] is also limited to simple work-related instructions and directions. She is limited to simple routine tasks but not at a production rate pace, e.g., assembly line work. [Plaintiff] is capable of sustaining concentration and pace for 2-hour segments throughout the duration of a stand[ard] 8-hour workday. [She] is limited to occasional contact with supervisors, coworkers[,] and the public. [Plaintiff] is capable of responding appropriately to routine changes in an unskilled work setting.

(Tr. at 14.) At step four of the analysis, the ALJ determined that all of Plaintiff's past relevant work exceeded her RFC. (Tr. at 20.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 20-21.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 21-22.)

Plaintiff now raises three challenges to the ALJ's decision, all relating to the testimony of the medical expert ("ME") at the supplementary hearing. Specifically, she contends that the ALJ (1) failed to properly instruct the ME regarding the concept of medical equivalence, (2) failed to provide the ME with all of the relevant medical evidence and testimony from the

first hearing in accordance with the Social Security Administration's Hearing, Appeals and Litigation Law Manuel ("HALLEX") section 1-2-6-70 (https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-70.html (last retrieved Dec. 14, 2018)), and (3) failed to give proper notice of the ME's testimony. As to each of these contentions, Plaintiff claims that the ALJ ultimately erred in failing to find that she suffered from migraine headaches that resulted in disability. After a thorough review of the record, the Court finds that none of Plaintiff's contentions merit remand.

A. Medical Equivalence

Plaintiff first argues that the ALJ failed to adequately instruct the ME regarding the concept of medical equivalence, relevant at step three of the sequential analysis. As explained at great length in both 20 C.F.R. § 404.1526(a) and Social Security Ruling 96-6p ("SSR 96-6p"), an impairment "is medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment." Pethel v. Colvin, No. 1:12CV1045, 2015 WL 631156, at *2 (M.D.N.C. Feb. 12, 2015) (Osteen, J.).[4] "To establish medical equivalence, a claimant must present medical findings equal in severity to *all* the criteria for that listing." Id. (emphasis added) (citing Sullivan v. Zebley, 493 U.S. 521, 531 (1990)). "Importantly, the plaintiff bears the burden at step three to establish that he meets or medically equals a listed impairment." Pethel, 2015 WL 631156, at *2 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

---

[4] The Court notes that for claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-6p, have been rescinded. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the rules set out above. See SSR 17-2p: Titles II and XVI: Evidence Needed by Adjudicators at the Hearings and Appeals Council Levels of the Administrative Review Process to Make Findings About Medical Equivalence, 82 Fed. Reg. 15,263 (March 27, 2017) (rescinding SSR 96-6p).

Here, Plaintiff's representative argued at her second hearing that Plaintiff's headaches equaled Listing 11.03 (Epilepsy), 20 C.F.R. Part 404, Subpart P, Appendix 1, 11.03 (hereinafter "Listing 11.03"). As other courts within the Fourth Circuit have explained,

> [t]here is not an express listing for headaches. However, "[w]here a claimant suffers from an unlisted impairment, the ALJ must compare the claimant's impairment with an analogous listed impairment." McShane v. Berryhill, No. CV 15-5137, 2017 WL 440269, at *3–4 (W.D. Ark. Feb. 1, 2017) (citing 20 C.F.R. § 404.1526). . . . As noted by Claimant, chronic headaches and migraines are routinely analyzed under the criteria for Listing 11.03 (Epilepsy). Cooper v. Berryhill, No. 115-CV-1740SEB-MJD, 2017 WL 1055078, at * 3 (S.D. Ind. Mar. 21, 2017). The SSA's Program Operations Manual System ("POMS") at DI 24505.015(B)(7)(b) likewise identifies Listing 11.03 as the most "closely analogous" listed impairment to chronic migraine headaches. McShane, 2017 WL 440269, at *3; see, also, Mann v. Colvin, 100 F.Supp.3d 710, 719 (N.D. Iowa 2015); Loree v. Colvin, No. 2:15-CV-251-JMC, 2016 WL 5107028, at *6 (D. Vt. Sept. 20, 2016) (noting that the *SSA's National Q&A 09-036* confirms that "the most appropriate Listing for consideration in [headache] cases is Listing 11.03").

In January 2017, Section 11.00 was substantially revised, *inter alia*, reserving Listing 11.03. Id. However, at the time of the ALJ's decision on October 26, 2015, Listing 11.03 stated the following:

> 11.03 Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

Id. at § 11.03. In the POMS at DI 24505.015, the SSA provides the following example of how the analysis should be performed to determine if a claimant's migraine headaches medically equal Listing 11.03:

> A claimant has chronic migraine headaches for which she sees her treating doctor on a regular basis. Her symptoms include aura, alteration of awareness, and intense headache with throbbing and severe pain. She has nausea and photophobia and must lie down in a dark and quiet room for relief. Her headaches

last anywhere from 4 to 72 hours and occur at least 2 times or more weekly. Due to all of her symptoms, she has difficulty performing her [activities of daily living]. The claimant takes medication as her doctor prescribes. The findings of the claimant's impairment are very similar to those of 11.03, Epilepsy, nonconvulsive. Therefore, 11.03 is the most closely analogous listed impairment. Her findings are at least of equal medical significance as those of the most closely analogous listed impairment. Therefore, the claimant's impairment medically equals listing 11.03.

Courts that have discussed the proper way to evaluate headaches have provided further guidance on how migraine headaches may be examined for equivalency to Listing 11.03. See Dunlap v. Colvin, No. 15-CV-02139-NYW, 2016 WL 5405208, at *9 (D. Colo. Sept. 28, 2016); Plummer v. Colvin, No. CV-13-08282-PCT-BSB, 2014 WL 7150682, at *10 (D. Ariz. Dec. 16, 2014); Mescher v. Berryhill, No. 4:15-CV-0859-BL, 2017 WL 998373, at *3–5 (N.D. Tex. Mar. 15, 2017).

Johnson v. Berryhill, No. 2:17-cv-01608, 2018 WL 1096463, at *13-14 (S.D. W. Va. Feb. 1, 2018).

Plaintiff now contends that the ALJ's failure to specifically read or a provide copy of 20 C.F.R. § 404.1526 and "Policy Statement No. 09036" to the ME constituted reversible error. She also challenges the ALJ's failure to expressly include "Policy Statement No. 09036" in his own discussion at step three of the sequential analysis. However, Plaintiff cites no authority for her assertion that such failings automatically render the ALJ's decision "defective." (Pl.'s Br. [Doc. #10] at 5.) Moreover, the policy statement in question, cited by Plaintiff's counsel at her hearing, corresponds, by her own evidence, to the Program Operations Manual System (POMS DI24505.015), which provides examples indicating which listings non-listed impairments should be compared to for purposes of medical equivalence. (Tr. at 65-68.) Here, the ALJ expressly considered whether Plaintiff's headaches met or

equaled Listing 11.03, as set out in the guidance cited by Plaintiff, and concluded that they did not. (Tr. at 12.) Accordingly, the Court finds no error on this basis.

Although Plaintiff does not directly challenge the ALJ's listing analysis, the Court notes that the analysis itself fails to demonstrate any further basis for remand. At step three, the ALJ first noted that the State agency medical consultants found that no listing was met or equaled, and found that "no medical evidence has been submitted at the hearing level that would alter that conclusion." (Tr. at 12.) The ALJ specifically found that Plaintiff's "headaches do not meet the criteria of listing 11.03, as there is no objective evidence [that Plaintiff's headaches] result in alteration of awareness or loss of consciousness." (Tr. at 12.) In addition, the ALJ noted that "no medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (Tr. at 13.) The ALJ further discussed Plaintiff's headaches in reviewing the medical evidence, and clearly explained in his decision that Plaintiff failed to manifest all of the relevant symptoms of migraines until well after her December 31, 2014 date last insured. In particular, he noted that:

> [Plaintiff] indicated that her headache pain waxed and waned. [Plaintiff] denied associated photophobia, phonophobia until August 2016 at which time she endorsed photophobia, phonophobia, nausea and vomiting on a daily basis. However, the MRI of the brain and the EEG were normal. Dr. Frederik Pfeiffer opined that depression, anxiety and hypertension contributed to her headache pain. The other possibilities were pseudo tumor cerberi or obstructive sleep apnea. There is no evidence in the file supportive of pseudo tupor cerberi or obstructive sleep apnea.

(Tr. at 17) (citing Tr. at 571, 574). The medical records cited by the ALJ reflect that Plaintiff saw her neurologist, Dr. Michael Amiri, regarding headaches and carpal tunnel syndrome in February 2010 and March 2010, and Dr. Amiri's impression reflects that Plaintiff's headaches, as described, were "suggestive of tension headache." (Tr. at 573, 576.) Plaintiff did not return

to Dr. Amiri until June 3, 2015, after her date last insured. At her visits in June 2015, November 2015, and March 2016, Dr. Amiri's impression continues to reflect that Plaintiff's headaches, as described, were "suggestive of tension headache," and Dr. Amiri opined that "the underlying depression and anxiety are not controlled very well, and that is the reason behind her tension headache." (Tr. at 580, 584, 589.) The first diagnosis of possible migraine headaches by Dr. Amiri is in May 2016, over 17 months after the date last insured. (Tr. at 593.) Plaintiff's medical records also reflect several medical appointments during 2013 and 2014, including Carolina Neurosurgery on June 24, 2013, and Cabarrus Family Medicine on August 23, 2013 and November 10, 2014, for back pain, allergies, and hypertension, but no complaints of headaches. (Tr. at 480, 488-90, 542-45.)[5]

Accordingly, substantial evidence supports both the ALJ's inclusion of headaches, rather than migraines, among Plaintiff's severe impairments at step two of the sequential analysis for the period up to December 31, 2014, and his further finding at step three that these headaches failed to meet or equal Listing 11.03.[6]

---

[5] Notably, Plaintiff relies primarily on a "headache calendar" that she prepared for the period covering January 2014 to May 2016, documenting her alleged migraine headaches. However, the objective medical evidence does not support Plaintiff's contentions. For example, Plaintiff's self-prepared headache calendar reflects that she was suffering from a "moderate migraine" on November 10, 2014, but the medical records reflect that on November 10, 2014, she visited Cabarrus Family Medicine for a follow-up on her hypertension, with no complaints of a headache. (Tr. at 542.) Similarly, the "headache calendar" reflects "severe migraine" on July 1, 2015, and October 9, 2015, but the medical records reflect medical appointments on those dates for various other issues with no headache complaints. (Tr. at 534, 522.) Plaintiff's "headache calendar" also notes "mild migraine" on June 9, 2015, July 3, 2015, and July 8, 2015, but Plaintiff's medical records reflect doctor visits on those dates for various other issues with no complaints of a headache and noting "no headache" and "feeling well." (Tr. at 537, 531, 527.)

[6] Although Plaintiff's argument focuses on errors pertaining to the ME's testimony, the regulations clearly provide that equivalency remains an issue reserved to the Commissioner. 20 C.F.R. § 404.1526(e); Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *3. This is because "[w]hether the findings for an individual's impairment meet[s or equals] the requirements of an impairment in the listings is usually more a question of medical fact than a question of medical opinion." SSR 96-5p, 1996 WL 374183, at *3. Under 20 C.F.R. § 404.1526(b) and § 404.1529(d)(3), an ALJ should determine "whether [a claimant's] symptoms, signs,

B. HALLEX 1-2-6-70

In a related argument, Plaintiff asserts that the ALJ erred by failing to comply with HALLEX section 1-2-6-70 when examining the ME at the second hearing. The section in question notes that a ME need not attend an administrative hearing in its entirety. However, where he does not do so, the ALJ must summarize prior, "pertinent" testimony on the record before the ME testifies. In addition, the ALJ must verify that the ME has examined all of the "pertinent evidence." Plaintiff contends that the hearing transcript in the present case fails to show compliance with either requirement, and, as such, remand is required.

With respect to this issue, the Court notes first there is a circuit split as to whether HALLEX is binding on the Commissioner. Although the Fourth Circuit has not addressed the issue, "the persuasive authority among the District Courts holds that HALLEX lacks force of law." Rogers v. Berryhill, No. 5:17CV27, 2018 WL 1308952, at *4 (W.D.N.C. Mar. 13, 2018) (citing King v. Berryhill, No. 3:17-CV-380-MOC, 2018 WL 709968, at *5 (W.D.N.C. Feb. 5, 2018) (holding that the HALLEX is an internal guidance tool that lacks force of law); Schrader v. Astrue, No. 3:12-CV-54, 2013 WL 1192315, at *3 (N.D.W. Va. Mar. 22, 2013) (recognizing that HALLEX is an internal Social Security Administration policy manual that does not impose judicially enforceable duties on either the ALJ or the court); Harris v. Astrue, No. 2:12-CV-45, 2012 WL 7785082, at *6 (N.D. W. Va. Nov. 30, 2012) ("Because HALLEX is an agency interpretation that lacks the force of law, this Court cannot force the

---

and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a listed impairment" by considering "whether [her] symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria." 20 C.F.R. § 404.1529(d)(3). Notably, in undertaking such an analysis, the ALJ "will not substitute [a claimant's] allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of [her] impairment(s) to that of a listed impairment." Id.

Commissioner to follow it or provide a remedy to any claimant who avers that the Commissioner did not follow it."); Melvin v. Astrue, 602 F. Supp. 2d 694, 704 (E.D.N.C. Feb. 6, 2009) (HALLEX is an internal guidance tool; thus, it lacks the force of law)). As such, an error in the application of HALLEX guidelines in the present case, if any, provides no basis for remand.

Moreover, Plaintiff points to no pertinent evidence that the ME did not have. At the second hearing, the ME confirmed that he had all of the medical evidence through Exhibit 11F. (Tr. at 54.) Plaintiff's representative also noted Plaintiff's diary of her headaches and the frequencies reported in that headache calendar. (Tr. at 64.) The ME ultimately opined that regardless of Plaintiff's subjective descriptions, there was no objective finding or medical evidence of record to support a listing equivalence. (Tr. at 64-66.) When asked if there was evidence of alteration of awareness or loss of consciousness or significant interference with activity during the day that is documented by objective medical evidence, the ME testified that there was not. (Tr. at 66.) Plaintiff points to no additional pertinent evidence not considered by the ME.

C. Notice

In Plaintiff's third and final challenge, she contends that the ALJ failed to give proper notice of ME testimony at the supplemental hearing. Plaintiff's representative raised this issue prior to the hearing, arguing that she discovered the ALJ's intent to introduce ME testimony only three days before the hearing, in violation of the Act's 20-day notice requirement, set out

in 20 C.F.R. § 404.938. The representative moved for a continuance of the September 7, 2016 hearing on this basis, which the ALJ denied. (Tr. at 40-42.)

As to this issue, the record reflects that on March 1, 2016, Plaintiff was given Notice of her initial hearing, scheduled for May 24, 2016. At the closing of Plaintiff's first hearing on May 24, 2016, Plaintiff's representative acknowledged the need for further opinion evidence to establish Plaintiff's limitations prior to her December 31, 2014 date last insured, and requested time to obtain that opinion evidence. (Tr. at 112.) The ALJ responded:

> I'll leave the record open for the receipt of those documents. . . . Depending on what they say, I also might consider asking for an opinion regarding whether or not the degree of limitations that presented could reasonably have [been] obtained as of that December 2014 date. But, that might not be necessary depending of what you provide. I'll just wait and see.
> . . . .
> Once I receive those records, Ms. Landrum, I should be able to make a decision. If not, I might ask for some expert opinion regarding your medical records to give me a sense of what was possibly going on prior to your date last insured. You understand that's an important issue in your case. It is certainly important to me. I want to thank you for your time and your testimony today.

(Tr. at 112-14.) On June 3, 2016, Plaintiff's representative wrote to the ALJ, indicating that Plaintiff's neurologist, Dr. Amiri, could not provide an opinion regarding the severity of Plaintiff's impairments up to December 31, 2014. (Tr. at 409.) Plaintiff's representative requested that the ALJ "obtain a medical expert opinion." (Tr. at 409.) On August 18, 2016, the ALJ issued a Notice of the supplemental hearing set for 20 days later, on September 7, 2016. (Tr. at 203.) Plaintiff responded on August 21, 2016, indicating that she would attend the hearing and was not asking for it to be rescheduled. (Tr. at 229.) On August 30, 2016, the ALJ provided a supplemental report from a Medical Expert, Dr. Willer. (Tr. at 413.) On September 5, 2016, Plaintiff's representative asked for an opportunity to question the author

of the report and requested a continuance of the hearing. (Tr. at 231.) The ALJ ultimately obtained another Medical Expert, Dr. Cook, to appear at the hearing, and the ALJ concluded that there was no basis to continue the hearing because it was a supplemental hearing and there was no report from Dr. Cook or need to otherwise prepare, since all of the testimony and opinion from Dr. Cook would be presented at the hearing with an opportunity to question Dr. Cook at that time. (Tr. at 234.) The hearing therefore proceeded as scheduled on September 7, 2016. Notably, in opening the supplemental hearing, the ALJ stated as follows:

> This proceeding initially convened on May 24, 2016. The case was placed in a post hearing status for the receipt of medical evidence that was to be provided by the claimant.

> It was my understanding the claimant had difficulty getting those bits of evidence from a treating source. At that point, the non-[attorney] representative did ask myself to obtain an expert opinion, which I had done in proffer to the claimant through representative. That individual is not able to testify today, so the Agency took a further step in requesting the appearance of an expert to provide further testimony in the case, which would be able to be obtained through the representative in this matter. That individual is Dr. Cook. The hearing is reconvened today for the purpose of that supplemental hearing.

(Tr. at 38-39.)

Based on the above, it appears that the ALJ not only gave Plaintiff notice of the possibility that an ME opinion would be required, but that Plaintiff herself later requested such an opinion. Moreover, the ALJ provided Notice of the supplemental hearing and Plaintiff confirmed her intent to attend without requesting a continuance. As contemplated at the conclusion of the first hearing, and as the ALJ made clear in his opening statement, the second hearing took place in light of Plaintiff's inability to obtain an opinion from Dr. Amiri and request for a Medical Expert, for the sole purpose of introducing the ME's opinions and

allowing Plaintiff an opportunity for cross-examination, of which she fully availed herself. (See Tr. at 58-68.) Accordingly, Plaintiff once again demonstrates no basis for remand.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #9] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 20th day of February, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge